# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALAN TINOCO, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-6845** |
| **MARINE SYSTEMS, INC.** | **SECTION: "S" (2)** |

## ORDER AND REASONS

The Motion for Summary Judgment (Doc. #29) by Azalea Fleet, Inc. (AFI) is **GRANTED**; AFI is entitled to summary judgment decreeing that the contract between AFI and AEP Elmwood, LLC ("Elmwood"), as a matter of law, obligates Elmwood to defend and indemnify AFI for plaintiff's injuries. The Motion for Summary Judgment (Doc. #32) and the Supplemental and Amended Motion for Summary Judgment (Docs. #39) by Elmwood are hereby **DENIED.**

## BACKGROUND

On November 7, 2006, plaintiff, a deckhand of the M/V MR. T and an employee of Gulf South Marine Transportation, was instructed by his captain to retrieve the MKJ-40B barge from a large fleet maintained by AFI. The day before, MEMCO, Elmwood's parent company, hired Gulf South to tow three barges, including the MKJ-40B, from AFI's fleet to locations designated by MEMCO. Plaintiff alleges that while attempting to gain leverage aboard an adjacent barge, he fell

backwards into the hole of the open hopper barge, the AZ686.[1]      At the time of the accident, AFI

and Elmwood were parties to an agreement entitled, "Barge Wash and Repair and Fleeting, Shifting,

and Midstream and Tow Service Agreement." Under the contract, which the parties agree is subject

to maritime law, Elmwood was to service AFI's barges by providing dry-dock services and topside

repairs, and agreed to use AFI's fleet-related services for shifting, towing and fleeting. Elmwood

also agreed to indemnify AFI for any personal injuries to Elmwood Group employees which "arise

from, grow out of, or be connected with, directly or indirectly, any services performed by

ELMWOOD GROUP or AZALEA GROUP under this Agreement." The Elmwood Group includes

Elmwood, AEP MEMCO, LLC, and Gulf South, plaintiff's employer.

     AFI and Elmwood have filed cross motions for summary judgment. AFI contends that

Elmwood owes it defense and indemnity for plaintiff's injuries as well as attorney's fees. AFI

further contends that plaintiff's claims "arise from," and "grow out of" the services under the

contract because at the time of the accident, AFI was performing fleet-related services to MEMCO,

MEMCO's barges, and barges owned by third-parties for whom MEMCO was providing towing

services.

     Elmwood seeks summary judgment that it is not obligated to indemnify AFI because, at the

time of the accident, plaintiff was engaged in building or breaking a tow, which the Elmwood Group

was not required to do under the contract. Elmwood argues that prior to the accident, the captain of

the MR. T, which is owned by Gulf South, advised the AFI fleet boat that he needed the MKJ-40B

---

[1]The AZ686 is a permanent spar barge owned and operated by AFI, which used it to store covers for barges.

barge, and was told by an AFI employee that AFI would not be able to get to the barge for some time. At that point, the captain of the MR. T directed plaintiff to retrieve the MKJ-40B. Elmwood argues that because Gulf South, and not AFI, built the tow, plaintiff was injured while performing a service for Gulf South, which is outside the contract. Further, Elmwood alleges that AFI's refusal to build the tow under the contract resulted in plaintiff's having to work an unfamiliar fleet at night with a spar barge with a dangerous and unprotected hole. Elmwood filed a Supplemental and Amended Motion for Summary judgment, seeking attorneys' fees and costs incurred in defense of plaintiff's claim. Elmwood also moves for summary judgment that it does not owe indemnity to AFI for AFI's gross negligence.

## ANALYSIS

### 1. Legal Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[2] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[3]

A determination of whether a contract is ambiguous and the interpretation of a contract are questions of law.[4] A contract is ambiguous when its meaning is susceptible to more than one

---

[2] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[3] *Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

[4] *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 821 (5th Cir. 2003).

interpretation.[5]  "Disagreement as to the meaning of the contact does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties."[6]  Where "'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law.'"[7]

## 2.  The Contract

The contract at issue states that AFI will provide fleeting, shifting, breaking and building tow services, to MEMCO.[8]  MEMCO barges are defined in the contract as "a[ny] AEP MEMCO, LLC ... owned or operated barge."[9]

The contract further provides:

> The construction of this Agreement shall be governed by the maritime law of the United States of America.  In the event the maritime law of the United States of America shall not be applicable, this Agreement shall be governed by the law of the State of Louisiana.[10]

---

[5] *Reliant Energy,* 349 F.3d at 821.

[6] *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997).

[7] *Weir*, 123 F.3d at 286 (*quoting D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir. 1992)).

[8] *See* Doc. #29, Ex. A, section 3 of the contract at 6-7.

[9] *See id.,* section 2(B)(1) of the contract at 6.

[10] *See* Doc. #29, Ex. A, section 14 of the contract at 22.

The defense and indemnity provision of the contract provides:

> ELMWOOD shall protect, defend, indemnify, and hold harmless AZALEA GROUP from and against any and all claims, suits, losses, liabilities, demands, costs, damages or expenses (including attorney fees) resulting from bodily injury to, or illnesses of, or loss of services or wages of, or death of employees of ELMWOOD GROUP which may, in any manner, arise from, grow out of, or be connected with, directly or indirectly, any services performed by ELMWOOD GROUP or AZALEA GROUP under this Agreement, including but not limited to any claim, suit or liability arising from or related to ingress/egress to/from the premises of AZALEA GROUP or to/from any vessel owned, operated, or time or bareboat chartered by AZALEA GROUP, or third parties, including those premises utilized, leased, or occupied by AZALEA GROUP, without limitation and without regard to the cause or causes thereof, or whether resulting from the sole or concurrent negligence, strict liability or other fault of any of AZALEA GROUP or the unseaworthiness of any vessel.[11]

Additionally, the contract provides:

> If either or both of the parties are required to retain the services of an attorney to enforce or defend any part of this Agreement, the prevailing party shall be entitled to its incurred attorney fees and costs.[12]

## 3. Motions for Summary Judgment: Defense and Indemnity; Attorney Fees

In support of its motion for summary judgment, AFI contends that the contract obligates Elmwood to defend and indemnify AFI "without limitation and without regard to the cause or causes thereof"; and that the defense and indemnity obligation extends to the actions of MEMCO, which hired Gulf South to remove three barges from AFI's fleet and tow them to other locations. AFI

---

[11] *See* Doc. #29, Ex. A, sections 9(A)(14) and 10(5) of the contract at 19-20. Azalea Group is defined as AFI, "and its affiliated, associated, parent and subsidiary companies, ..., successors and assigns, contractors and subcontractors (other than Elmwood), and its and their officers, directors, stockholders, insurers, and employees."

[12] *See* Doc. #29, Ex. A, section 17 of the contract, at 23.

argues that the defense and indemnity language of the contract is subject to broad construction and was triggered, even though at the time of the accident, plaintiff was engaged in breaking a tow, which is not a service that Elmwood was required to perform under the contract.

In support of its motion for summary judgment, Elmwood contends that the indemnity provision is subject to strict construction, and that it does not owe defense and indemnity to AFI because plaintiff was injured when performing services that Elmwood was not contracted to perform and that AFI was obligated to perform under the contract.

"Agreements to indemnify are construed to give effect to the intent of the parties. To determine intent, we look first to the contract language; we only look beyond the language if it is unclear or ambiguous."[13] "A maritime contract containing an indemnity agreement ... should be read as a whole and its words given their plain meaning unless the provision is ambiguous."[14] "A court should construe [an] indemnity clause to cover all losses which reasonably appear to have been within [the parties'] contemplation."[15]

According to Fifth Circuit precedent announced in *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)(internal quotations omitted), under federal maritime law,

> [a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly

---

[13]*Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 220 (5th Cir. 2005), *rehrg granted as to amount of defense costs*, 423 F.3d 522, 524 (5th Cir. 2005).

[14]*Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984).

[15]*Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985)(internal quotations and citation omitted).

within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

Further, indemnification for an indemnitee's own negligence must be "clearly and unequivocally expressed."[16]

The indemnity clause in this case provides indemnification for any claims "which may in any manner, arise from, grow out of, or be connected with, directly or indirectly, any services performed by ELMWOOD GROUP or AZALEA GROUP under this Agreement ... without limitation and without regard to the cause or causes thereof, or whether resulting form the sole or concurrent negligence, strict liability or other fault of any of the AZALEA GROUP or the unseaworthiness of any vessel."

Similar language in maritime indemnity agreements has been construed broadly by the Fifth Circuit. The words "in connection with the ... services to be rendered ... under this contract" in an agreement between a subcontractor and contractor were construed to trigger indemnity obligations for a subcontractor's injuries caused by the contractor's pumping of ballast out of a submerged tank, even though the activity causing the injury occurred outside the premises described by the subcontractor's work orders and even though the subcontractor was not performing contract services at the time of the injury.[17] In a case where an independent contractor-welder caused a tank of oil and gas to explode, killing a number of employees of a drilling contractor, the Fifth Circuit held that the

---

[16]*Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984).

[17]*Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 824-25 (5th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976), and *abrogated on other grounds, Johnson v. Odeco Oil & Gas*, 864 F.2d 40, 42-43 (5th Cir. 1989).

defendants' claims were contemplated by the indemnity provision referring to claims "arising out of or incident to the work to be performed under this contract," even though the welding activity was unrelated to the drilling contractor's duties under the contract.[18]  In another case, a maritime agreement providing indemnity "without limit and without regard to the cause or causes thereof or the negligence of any party, arising in connection herewith ..." was found to trigger the indemnity obligation for the injuries of an employee of a third party, even though the employee's activity was not related to the contractor's work under the contract.[19]

The Fifth Circuit noted:

> [W]here the presence of the injured person at the scene of the injury is attributable to or might reasonably be anticipated by his employment responsibilities, then his injuries occur "in connection with" those responsibilities.  It is irrelevant that the person is not at that moment performing services or that the injury results from activity not encompassed by the employer's contractual undertakings.[20]
>
> . . .
>
> Judicial attempts to determine which injuries occurred "in connection with" which activities are destined to produce unprincipled distinctions and cannot be expected to address the countless possibilities for injuries in the offshore workplace.

This is not to say that the parties cannot contract for a more

---

[18]*Dickerson v. Continental Oil Co.*, 449 F.2d 1209, 1221-22 (5th Cir. 1971), *cert. denied,* 405 U.S. 934 (1972) (construing indemnity agreement under Louisiana law). In *Fontenot,* the Fifth Circuit noted that while *Dickerson* concerned Louisiana law, the opinion was nonetheless germane to an indemnity agreement under maritime law, because "[t]he standard under Louisiana law, however, is for most purposes substantially identical to the standard under maritime law."  *Fontenot v. Mesa Petroleum Co., 791 F2d 1207, 1215 n. 6 (5th Cir. 1986).

[19]*Fontenot,* 791 F.2d at 1213-14 and 1216.

[20]*Fontenot,* 791 F.2d at 1215.

precise definition of their indemnity obligations, e.g., by defining indemnity obligations according to which party's negligence caused the injury (to the extent permitted by law), or by limiting indemnity obligations to injuries incurred during working hours or during particularized operations, etc. However, the clear import of our decisions is that, absent more precise language in maritime contracts, we construe broadly "in connection with" and similar terms included in indemnification agreements.[21]

It is undisputed that, at the time of the accident, plaintiff was not performing services that the Elmwood Group was obligated to perform under the contract. However, at the time of the accident, plaintiff was engaged in activity that was attributable to his employment responsibilities as an employee of Gulf South, which is a part of the Elmwood Group; and that his injuries occurred "in connection with those responsibilities."[22] Guided by Fifth Circuit cases construing similar indemnity language, this court finds no ambiguity in the indemnity agreement between AFI and Elmwood. Broadly construing the indemnity provision, the court concludes, as a matter of law, that Elmwood is obligated to indemnify AFI because plaintiff's activities as alleged at the time of the accident "arise from, grow out of, or be connected with, directly or indirectly, any services performed by ELMWOOD GROUP or AZALEA GROUP."

Accordingly, because there are no disputed questions of material fact on this issue, AFI is entitled to summary judgment that Elmwood owes AFI indemnity under the contract. Elmwood is not entitled to summary judgment that Elmwood does not owe indemnity to AFI.

The parties also seek summary judgment that each is entitled to attorney's fees for enforcing

---

[21]*Fontenot,* 791 F.2d at 1215 n.8.

[22]*See Fontenot,* 791 F.2d at 1215.

or defending the contract between them. The contract states that "the prevailing party shall be entitled to its incurred attorney fees and costs." This court has concluded that Elmwood is obligated to defend indemnify AFI. Accordingly, AFI is entitled, as a matter of law, to summary judgment that Elmwood owes AFI attorney's fees and costs under the contract. Further, Elmwood is not entitled, as a matter of law, to summary judgment that under the contract, AFI owes Elmwood attorney's fees and costs.

**5. Gross Negligence**

Elmwood also moves for summary judgment, decreeing that the contract, which is silent as to gross negligence, does not obligate Elmwood to indemnify AFI for AFI's gross negligence in causing plaintiff's injuries by providing a hopper barge with an unprotected hole. Elmwood argues that AFI was grossly negligent because the AZ686's "coaming," or the raised lip that surrounded the hopper opening of the barge, was cut off, causing the opening to be flush with the deck and creating an unprotected, unmarked drop-off into the hopper.

The issue whether the contract covers AFI's grossly negligent acts is not properly before the court. Neither plaintiff's complaint nor Elmwood's answer to the AFI's third party demand alleges that AFI was grossly negligent. Thus, it is improper for this court to render an opinion as to whether the contract covers grossly negligent acts when the issue is not framed in the complaint nor pertinent responsive pleadings between the parties. Elmwood is not entitled, as a matter of law, to summary judgment that the contract does not cover the grossly negligent acts of AFI.

## CONCLUSION

The Motion for Summary Judgment by Azalea Fleet, Inc. is **GRANTED**; AFI is entitled to

summary judgment decreeing that the contract between AFI and Elmwood, as a matter of law, obligates Elmwood to defend and indemnify AFI for plaintiff's injuries. The Motion for Summary Judgment and the Supplemental and Amended Motion for Summary Judgment by AEP Elmwood, LLC are **DENIED.**

New Orleans, Louisiana, this _19th_ day of May, 2009.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**